UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NON TYPICAL INC.,

        Plaintiff,

and

HANOVER INSURANCE COMPANY,                      Case No. 10-C-1058

        Involuntary Plaintiff,

and

HANOVER INSURANCE COMPANY and
CITIZENS INSURANCE COMPANY OF AMERICA,

        as Subrogees of Non typical Inc.,

   v.

TRANSGLOBAL LOGISTICS GROUP INC, and
SCHNEIDER LOGISTICS INTERNATIONAL INC.,

        Defendants.

**MEMORANDUM AND ORDER**

This case arises out of the loss of 10,800 high value digital cameras during transit from China to Wisconsin. The owner of the cameras, Non Typical, Inc., alleges that Transglobal Logistics Group, Inc. ("Transglobal"), and Schneider Logistics International, Inc. ("Schneider"), are liable for the missing cameras, which were apparently stolen from a Transglobal freight yard in Illinois. Plaintiff Non Typical asserts claims for negligence, breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing against Schneider based

on Schneider's role in facilitating the transportation of the cameras. Presently before the Court is Schneider's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Dkt. 13.) For the reasons stated herein Schneider's motion will be granted in part and denied in part.

## BACKGROUND

The facts, as set forth in the Amended Compliant, are as follows: Non Typical is a Wisconsin company located in De Pere which, among other things, sells digital cameras. (Am. Compl., ¶ 3.) It retained Schneider to arrange for transportation of cameras from China to De Pere. (Am. Compl., ¶ 7.) The cameras are alleged to have a sales value of more than $1.8 million. (Am. Compl., ¶ 14.) Non Typical insured the cameras with The Hanover Insurance Company. (Am. Compl., ¶ 4.) Schneider did not provide any of the transportation services and is not alleged to have ever had possession of the cameras. Instead, the cameras were shipped from China pursuant to bills of lading issued by RS Logistics, Ltd., and Hanjin Shipping. (Am. Compl., ¶¶ 10, 11.) The cameras were eventually picked up at Elwood, Illinois by Transglobal, an Illinois company which serves as a common carrier. (Am. Compl., ¶¶ 5, 13.) Transglobal took the cameras to its yard in Channahon, Illinois, for preparation for delivery to Non Typical in De Pere. (Am. Compl., ¶¶ 13, 15.) A few days later, it was discovered that the shipping container containing the cameras was missing. As a result, Transglobal was unable to deliver the cameras to Non Typical. (Am. Compl., ¶¶ 16, 17.) The cameras were apparently stolen from Transglobal's Illinois freight yard. (Am. Compl., ¶ 31.)

The Amended Complaint alleges that Non Typical "retained" Schneider to provide services (Am. Compl., ¶ 7.) Non Typical told Schneider that the camera shipment involved high value goods

2

(Am. Compl., ¶8), and instructed Schneider to select carriers which would "properly secure" the goods. (Am. Compl., ¶ 9.)

**LEGAL STANDARD**

A motion to dismiss challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). As a general rule, notice pleading remains the standard. *Bausch v. Stryker Corp.,* 630 F.3d 546, 559 (7th Cir.2010) (*quoting Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Services,* 536 F.3d 663, 667 (7th Cir.2008)).

The pleading process is meant to "'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (*quoting Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). Hence, the court gives the plaintiffs "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Bissessur v. Indiana Univ. Bd. of Trs.,* 581 F.3d 599, 603 (7th Cir.2009) (*quoting Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994)). "Together, these rules ensure that claims are determined on their merits rather than on pleading technicalities." *Christensen v. County of Boone,* 483 F.3d 454, 458 (7th Cir.2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide the grounds for his relief, and must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570.

3

**ANALYSIS**

This Court has jurisdiction because the amount in controversy exceeds $75,000 and because Non Typical is a citizen of Wisconsin and Schneider is a California corporation with its principal place of business in California. *See* 28 U.S.C. § 1332.

In its brief opposing the motion to dismiss Non Typical indicates that it may have a claim against Schneider under the Carmack Amendment, 49 U.S.C. § 14706, but the Amended Complaint (Dkt. 12) does not include such a claim. I must first address this potential claim because if the federal Carmack Amendment applies, it preempts Non Typical's state common law claims. *Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992); *Smith v. UPS,* 296 F.3d 1244, 1246 (11th Cir. 2002). The Carmack Amendment does not apply to persons who do not provide actual transportation of property. *Lumbermens Mut. Cas. Co. v. GES Exposition Servs.*, 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003). Brokers do not provide actual transportation but "freight forwarders" do. Non-Typical's response brief notes the possibility that additional discovery could support a conclusion that Schneider is actually a "freight forwarder" – a classification that *is* subject to the Carmack Amendment. (Non Typical Br., Dkt. 20 at 4-5.) Non Typical seems to want to keep open the option of a Carmack Amendment claim while moving forward on its four state law causes of action against Schneider. But it is clear that Non Typical has *not* asserted a claim against Schneider under the Carmack Amendment. Nowhere in the Amended Complaint does Non Typical allege that Schneider is a "freight forwarder" or infer that Schneider violated the federal law. For purposes of analyzing a motion to dismiss this Court looks at the actual claims asserted in the Amended Complaint. *See Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998) (When reviewing a motion to dismiss under Rule 12(b)(6), a court merely looks to the

sufficiency of the complaint). And here Non Typical's Amended Complaint does not assert a Carmack Amendment claim against Schneider. Thus, I conclude that the Carmack Amendment does not apply.

I turn, then, to the four state law claims Non Typical asserts against Schneider. Non Typical has asserted claims against Schneider for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and negligence. The parties agree that Wisconsin law governs these state law causes of action. Federal courts apply the choice of law rules of the forum state (here Wisconsin) and Wisconsin's choice of law rules indicate that Wisconsin law presumptively applies unless it is clear that non-forum contacts are of greater significance. *Wood v. Mid-Valley, Inc.,* 942 F.2d 425, 426-27 (7th Cir. 1991); *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31 ¶ 51, 251 Wis.2d 561, 641 N.W.2d 662; *see also Harter v. Iowa Grain Co.*, 211 F.3d 338, 352-53 n. 12 (7th Cir.2000) (we forego choice of law analysis when the parties agree on the law that governs a dispute and there is a reasonable relation between the dispute and the forum whose law has been selected).

**I. Negligence**

Non Typical's Amended Complaint sets forth a negligence claim against Schneider. (Am. Compl. ¶¶ 40-53.) In Wisconsin, a plaintiff must establish four elements to succeed in a negligence action: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) actual loss or damages resulting from the injury. *See Rockweit v. Senecal,* 197 Wis.2d 409, 541 N.W.2d 742, 747 (1995). The plaintiff bears the burden of production and proof on each of these elements. *See Transportation Ins. Co. v.*

*Hunzinger Constr. Co.,* 179 Wis.2d 281, 507 N.W.2d 136, 140 (1993). Schneider argues that Non Typical's Amended Complaint fails to state a claim for negligence because there are no allegations that Schneider was actually negligent or did anything that was a cause in fact of the loss, Non Typical's claim is barred by public policy considerations, and the claim is barred under the doctrine of superseding cause.

Non Typical's Amended Complaint alleges that Non Typical hired Schneider "to coordinate the transportation of high value cameras from Yantian, China, to De Pere, Wisconsin." (Am. Compl. ¶ 41.) Non Typical further alleges that it "notified Schneider that the goods were high value goods" and "instructed Schneider to ensure that carriers selected for said transportation of the high value cameras would properly secure the high value cameras." (*Id.* ¶¶ 43-44.) These allegations are sufficient to give rise to a contractual duty for Schneider to use due care in selecting a carrier that would use proper precautions to insure that the cameras were not stolen in transit. Under Wisconsin law, a breach of a contractual duty can constitute actionable negligence. *Melrose Intern. Trading Co. of Canada, Ltd. v. Patrick Cudahy Inc.*, 482 F. Supp. 1369, 1377 (E.D. Wis. 1980); *but see also Atkinson v. Everbrite, Inc.*, 224 Wis. 2d 724, 729, 592 N.W.2d 299, 302 (Ct. App. 1999) ("A party's deficient performance of a contract does not give rise to a tort claim."). The allegations that the carrier Schneider selected, Transglobal, left the shipment valued at more than $1.8 million unguarded overnight in unsecured lot and that the shipment was stolen from that lot are sufficient to raise Non Typical's claim against Schneider to more than the speculative level. Crime in America is unfortunately not so rare that one could not be expected to anticipate the theft of more than $1.8 million of property that is left overnight unguarded in an unlocked shipping yard. And if in fact, Schneider took no steps to inquire about the precautions Transglobal intended to take to

6

protect the shipment entrusted to it, it is more than conceivable that a factfinder could conclude that such failure was a cause in fact of Non Typical's loss.

Schneider argues that even if its negligence constituted a cause in fact of Non Typical's loss, liability would be barred by public policy considerations. There are six public policy factors that Wisconsin courts use today to limit liability in negligence claims: "(1) the injury is too remote from the negligence; (2) the recovery is wholly out of proportion to the culpability of the negligent tort-feasor; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery would place too unreasonable a burden on the negligent tort-feasor; (5) recovery would be too likely to open the way to fraudulent claims; and (6) recovery would enter into a field that has no sensible or just stopping point." *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 29, 18 Wis.2d 622, 768 N.W.2d 568 (internal quotes omitted). But it is premature to decide whether any or all of these factors warrant a denial of liability under the circumstances of this case. *See Morgan v. Pennsylvania General Ins. Co.*, 87 Wis.2d 723, 738, 275 N.W.2d 660, 667 (1979) (noting that "it is generally better procedure to submit the negligence and cause-in-fact issues to the jury before addressing the public policy issue"). Even if a full trial would not be needed, more than the allegations of the complaint would be needed in this case. Without more information concerning the agreement of the parties, the practice in the industry, and the frequency of thefts, the Court is not in a position to properly assess the public policy considerations Wisconsin courts have identified.

The same is true of Schneider's claim that the theft was a superseding cause of Non Typical's loss. "A key inquiry in resolving the question of superseding cause is foreseeability." *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1323 (7th Cir. 1983) (citing *Ruff v. Burger*,

7

32 Wis.2d 141, 150, 145 N.W.2d 73, 77-78 (1966)). Where the actions of antecedent tortfeasors are foreseeable and should be anticipated, they generally do not be relieve a party of liability for his own negligence. *See Ruff,* 32 Wis. 2d at 151-52 (superseding cause doctrine does not apply if the superseding causes that defendant alleges are exactly the types of foreseeable consequences that he should be prepared to guard against). Without a more developed record it is impossible to determine whether Schneider's negligence, if any, would be excused under the superseding cause doctrine. Schneider's motion is therefore denied as to Non Typical's negligence claim.

**II. Breach of Contract**

Non Typical's Amended Complaint includes a breach of contract claim against Schneider. (Am. Compl. ¶¶ 54-60.) Breach of contract has familiar elements in Wisconsin; the plaintiff must show a valid contract that the defendant breached and damages flowing from that breach. *Northwestern Motor Car, Inc. v. Pope,* 51 Wis.2d 292, 296, 187 N.W.2d 200 (Wis.1971). Here Schneider does not seem to dispute the existence of a contract. Instead Schneider argues that Non Typical's Amended Complaint fails to provide enough information about the contract itself.

In analyzing contract disputes courts look to the parties' intentions as determined by a consideration of their words, written and oral, and their actions. *American Nat. Property and Casualty Co. v. Nersesian,* 2004 WI App 215, ¶ 18, 277 Wis.2d 430, 698 N.W.2d 922. "If parties evidently intended to enter a contract the trier of fact should not frustrate their intentions, but rather should attach a 'sufficiently definite meaning' to the contract language if possible." *Management Computer Services v. Hawkins, Ash, Baptie & Co.,* 206 Wis.2d 158, 179, 557 N.W.2d 67 (1996). Disputable inferences concerning the parties' intent to be bound by a contract, gleaned from what

8

the parties expressed publicly and to each other, create fact issues for the jury. *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814-15 (7th Cir.1987). Here the allegations are that Non Typical hired Schneider to arrange the transportation of its shipment of cameras from China to Wisconsin, advised Schneider of the value of its shipment, and instructed Schneider to insure that the carrier it selected properly secured the shipment. The reasonable inferences are that Schneider did, in fact, agree to provide such a service to Non Typical, selected Transglobal as the shipper, but failed to adequately insure that Transglobal was willing and able to take proper precautions to secure the shipment, and the shipment was stolen out of Transglobal's unlocked shipping yard.

These allegations are sufficient to state a claim for breach of contract. The key element of the claim is that Schreiber agreed to select a carrier who would properly secure the valuable shipment. Non Typical alleges that it instructed Schneider to select such a shipper, and it is reasonable to infer from the fact that Schneider arranged the transportation that it agreed to comply with Non Typical's instruction. Contracts need not be in writing to be valid, *Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.*, 407 F.3d 876, 879 (7th Cir. 2005), and performance can constitute acceptance of a unilateral offer. *See Schlosser v. Allis-Chalmers Corp.* 86 Wis.2d 226, 237, 271 N.W.2d 879, 884 (1978) ("According to basic principles of contract law, creation of a binding unilateral contract requires that the offeree perform the requested act with the intent of accepting the offer."). The fact that the complaint does not set forth the precise contours of the agreement is not a ground for dismissal. No rule of pleading requires that the contract set out the terms of the parties' agreement in detail.

Both parties cite and discuss *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009), as an example of an insufficiently plead contract claim. In *Bissessur* the plaintiff

9

simply alleged: "an implied contract existed" and that defendant "breached the implied contract that existed" and that defendant's actions were "arbitrary, capricious, and undertaken in bad faith." *Id.* The Seventh Circuit held that this bare recitation of the elements was insufficient to avoid dismissal. Highlighting the vague nature of the pleading, the court asked: "What was the contract? The promise made? The consideration? The nature of the breach?" *Id.* at 603. The complaint at issue in *Bissessur* answered none of the Court's questions. Here, however, Non Typical's Amended Complaint sufficient alleges the provision of the agreement and the nature of the breach. These allegations of breach are specific and serve to distinguish Non Typical's Amended Complaint from the bare recitation of elements at issue in *Bissessur.* 581 F.3d at 602. Schneider's motion will therefore be denied as to Non Typical's contract claim as well.

**III. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Non Typical's Amended Complaint alleges that Schneider breached the implied covenant of good faith and fair dealing. (Am. Compl. ¶¶ 61-76.) In Wisconsin every contract includes a duty of good faith. *In re Estate of Chayka,* 47 Wis. 2d 102, 107, 176 N.W.2d 561 (1970). The implied covenant of good faith prevents parties to a contract from "intentionally and purposely do[ing] anything to prevent the other party from carrying out his or her part of the agreement". *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 41, 301 Wis. 2d 752, 781, 734 N.W. 2d 169, 183. The covenant of good faith imposes a relatively limited obligation on the parties and is not a basis for creating rights not expressly included in the contract. The Seventh Circuit underscored the limited nature of this duty when it stated that good faith "is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at

the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank,* 908 F.2d 1351, 1357 (7th Cir. 1990). A breach the duty of good faith may be shown by proof of: evading the spirit of the bargain, exhibiting lack of diligence, willfully rendering imperfect performance, abusing power to specify terms, or by failing to cooperate with the other party's performance. *Foseid v. State Bank,* 197 Wis.2d 772, 796-97, 541 N.W. 2d 203 (2005).

Here, Non Typical has failed to allege that Schneider acted in any such manner. While Non Typical does allege that Schneider failed to perform under the contract, it does not necessarily follow that Schneider's actions breached the implied covenant of good faith and fair dealing. Non Typical argues that Schneider "imperfectly performed its obligations" (Non Typical Br., Dkt. 20 at 16) but perfect performance is not the standard against which courts measure potential breaches of the implied covenant of good faith and fair dealing. Indeed, a party may be liable for breach of the implied contractual covenant of good faith even though all the terms of a written agreement are fulfilled. *See Foseid,* 197 Wis.2d at 796. Likewise, a party could breach a contract but not breach the implied covenant of good faith. Here Non Typical's claim alleging breach of the implied duty of good faith and fair dealing must be dismissed because Non Typical has not put Schneider on notice of the nature of the claim. Non Typical's allegations are but a recast of the same allegations made in its breach of contact claim (discussed above). Such allegations do not put Schneider on notice as to what Non Typical believes Schneider did to take advantage of its contractual dealings with Non Typical. Nor do the allegations provide notice of what Schneider purportedly did to frustrate the goals of the contract. Non Typical's claim for breach of the implied covenant does not

11

raise its right to relief above a speculative level. For all of these reasons, the motion to dismiss the implied covenant of good faith and fair dealing will be granted.

**IV. Promissory Estoppel**

Non Typical also alleges a promissory estoppel claim against Schneider. (Am. Compl. ¶¶ 77-84.) The three elements of promissory estoppel were set forth in *Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 698, 133 N.W.2d 267, 275 (1965). They are: (1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee? (2) Did the promise induce such action or forbearance? (3) Can injustice be avoided only by enforcement of the promise? *Id.*; *Teff v. Unity Health Plans, Ins. Corp.*, 265 Wis.2d 703, 709, 666 N.W.2d 38 (Ct. App. 2003).

Promissory estoppel is an equitable theory with certain limitations. For example, if a plaintiff alleges that a contract exists, and incorporates such claim by reference into his promissory estoppel claim, a promissory estoppel claim will not lie. *Bertha v. Remy Int'l, Inc.* 414 F. Supp. 2d 869, 881 (E.D. Wis. 2006)("Although parties may present alternative and mutually exclusive claims in a complaint, the promissory estoppel claim would be alternative and mutually exclusive only if it alleged for purposes of that claim that no contract existed.") Here, as part of its promissory estoppel claim, Non Typical specifically "adopts and re-alleges Paragraphs 1-76." (Am. Compl. ¶ 77.) And one of those incorporated paragraphs alleges the existence of a contract between Schneider and Non Typical. (Am. Compl. ¶ 55) (stating that "Non Typical and Schneider entered into a contract . . .") As such Non Typical failed to plead promissory estoppel as an alternative theory. Rather Non Typical asserts both a contract claim and a promissory estoppel claim based on

12

related facts and even goes so far as to adopt and re-allege the existence of a contract *in* its promissory estoppel claim. *See Harley Marine Services, Inc. v. Manitowoc Marine Group, LLC,* 2010 WL 5463838 at *3 (E.D. Wis.) ("[W]here a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim.) This is but an application of the rule that "[a] plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits . . . ." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008) (*quoting Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 715 (7th Cir. 2006)).

Non Typical argues that it does not have to plead in the alternative because its theories for breach of contract and promissory estoppel are not incompatible. (Non Typical Br., Dkt. 20 at 17.) Non Typical attempts to distinguish the facts giving rise to its promissory estoppel claim from the facts giving rise to its breach of contract claim. Specifically it notes the difference between Schneider failing to review carriers' insurance certificates (part of the breach of contract claim) and Schneider promising Non Typical that the carriers would be properly insured (part of the promissory estoppel claim). (*Id.*) But Non Typical's attempt to distinguish ultimately shows how similar the two claims – breach of contract and promissory estoppel – are as alleged. Both come from Schneider's alleged failure to review its carriers' insurance certificates and subsequent communications about such insurance to Non Typical. Non Typical's promissory estoppel claim notably incorporates the existence of a contract. Assuming the parties had such a contract, their obligations to each other needed to be expressed in their contract, not in extra-contractual oral representations. *See Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,* 206 Wis.2d

158, 178, 557 N.W.2d 67 (1996) (A contract "must be definite as to the parties' basic commitments and obligations.") I conclude that Non Typical's promissory estoppel claim must be dismissed because Non Typical has incorporated the presence of a contract into its promissory estoppel claim and because it has not identified any promises that Schneider made apart from those which should have been made in the contract between the parties.

**CONCLUSION**

Accordingly, and for the reasons set forth above, the motion to dismiss (Dkt. 13) is **granted in part**. Specifically Non Typical's claims for promissory estoppel and breach of the implied obligation of good faith and fair dealing are dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Schneider's motion to dismiss the negligence and breach of contract claims is **denied.** The clerk is directed to schedule this matter for a scheduling conference.

**SO ORDERED** this   10th   day of May, 2011.

    s/ William C. Griesbach
    William C. Griesbach
    United States District Judge